Thank you. And good morning, everybody. And may it please the court and counsel. We are here to address and deal with what what is a creative indictment. And I think those are words that should give us pause. Because although there has been significant civil litigation in this area, the Malibu cases that we've cited, other civil lawsuits, and because the civil process that led up or that preceded the prosecution of Mr. Hansmeier included a full round of sanctions and penalties and suspensions. As far as a criminal prosecution, I think this is without precedent. At least that's that's how it looks to me. There has been over the course of the litigation on the question of the legality of the indictment in this case, and the scope of the federal criminal fraud statutes reach to it, an evolution of series really to that have been proposed by the prosecution for why it is that the conduct that is outlined in the indictment falls within the reach of the federal criminal fraud statutes. One theory focuses on court misconduct that then led to discovery authorization subpoenas that then led to information that led then led to identification of people that then led to contact with individuals. And the second theory proposed for the first time on appeal that focuses on on omissions from the demand letter that Mr. Hansmeier that the defendants sent out. So a new gravamen on appeal. I'd like I'd like to begin with that. On the appeal letter and the prosecution's claims about the appeal letter, we deal here with omissions, not with misstatements. And I would note to begin with that that the demand letter and the substance of the demand letter and indeed the substance of the prosecution's concerns about the demand letter is not really on the record. And although I think we're both guilty of tiptoeing over the edges of the indictment, all the indictment says about the demand letter is that it was extortionate and that that it was sent doesn't say anything about claimed fraudulent content of the demand letter or fraudulent omissions, which is the substance of what we're dealing with. So I'm not sure that that the actual complaints that the government makes about the demand letter are on the record. But but if the court is willing to look beyond that and put it in a way that I think calls potentially runs afoul of the requirement of particularity and fraud allegations outlined in, among other things, this court's Stefan decision in 19 or in 2012. They're talking about two omissions. One is that the demand letter says nothing about the defendant's role in uploading the material. The other is that the defendant did not disclose in the demand letter their alleged lack of an intent to sue. As far as their role in uploading, it is true that the demand letter does not say anything about that. However, as we've outlined in our briefing before this court, each of the steps that they that it is claimed that and that the indictment alleges that Mr. Hansmeier and his codefendant took in installing the material, the copyrighted material that was then downloaded that then led to the demand letters. Each of those steps is authorized by the Copyright Act. And you may we may not like it, but they are uploading is is perfectly within is a permitted activity. Uploading for seeding has been authorized suing people who download seeded material has been authorized. All that is within the scope of the Copyright Act. So the defendant's role in uploading and installing the material is at most an affirmative defense and maybe not even that. And so the government's suggestion that the failure to include information about the defendant's role, the defendant's failure to include information about their role in uploading the material, claiming that that is fraudulent, is is tantamount to saying that it can be fraudulent for a person to not disclose facts that might just might support an affirmative defense in a civil demand letter. And that would be when you when you say counsel, when you say that, that courts have have said it's fine to to do what you've described the uploading and the seeding. Is that uniformly held? Are there any outliers on that? In other words, is that a matter of dispute? I think it may be. And I don't have the decisions on our fingertips. And we cited the ones that that we're aware of. And the Malibu cases out of the northern district of Illinois seem to be the ones where this collection of issues were most fully developed. But I think the important point is that at most this is an affirmative defense. At least I think it can fairly be said, Judge Kelly, that that this conduct has not been held to automatically per se constitute a waiver of copyright protection or or the granting of a license. That that that has not been held. And I think this court's pendograph decision informs that as well. And and so so as to that piece, it's at most an affirmative defense that they're being accused of not including in the demand letter. Further, what we're talking about are omissions, both both for the their role, not saying anything about their role in uploading in the demand letter. And they're not saying anything about a claimed lack of intent to sue. These are omissions and for omissions to come within the scope of the fraud statute. This court has held in the Steffen decision in 2012 that there has to be an affirmative duty to disclose. None is suggested here or that there has to be affirmative concealment, not just not just nondisclosure, but affirmative concealment. And again, none is suggested here. So as a potential basis for a fraud, a criminal fraud prosecution, failure to disclose their role in uploading the material is not it doesn't fall within the scope of the law. Yes, excuse me. I'm not experienced as Judge Kelly, but a simple question. I noticed that the charges here are conspiracy. Does that change at the fact that only an affirmative acts required and only agreement and only you understand it takes it back one step from bare naked crimes? How do you respond to that fact? I don't know. It's really briefed. And well, you're free to tell me it's naive. I would not say that. But but I don't think that the fact that that Mr. Hansmeier pled guilty to conspiracy charges, conspiracy to commit fraud subject to the conditional plea that brings us here. And conspiracy money laundering conspiracy changes the fundamental analysis that we're talking about here, the requirements and the parameters of the federal fraud statute are what they are. And they have these central components that are missing from the government's theory, materiality, a focus on money or property and misrepresentation that is central to the bargain. Those things just don't appear both for the what I'm talking about is the demand letter omission theory that they are bringing for the first time on appeal and for the misrepresentations to the court theory. That was what was presented at the district court level and what the district court focused on in its decision. So as to the threat to suit, not telling anybody that they had a threat that they didn't intend to sue. I think two points. It's not true because they did file lawsuits, but it's also not actionable in and of itself. And this court's decision in I.S. Joseph, although that focus of the Joseph decision in 1984 was on Rico still saying that failing to disclose a lack of an intent to sue in a demand letter is not just wrong, but criminally fraudulent would be an enormous and in our view, a misguided one. But what before time dwindles too much, I would like to hear on the first theory that you've you've described to see because I'd like to hear your your folk, the main focus of your concern on that one regarding the misrepresentations to the court. Sure. So so there are a whole there are a number of problems with that theory, each of which I think is fatal to using it as a basis for criminal fraud. First, the court is not claimed as a victim of the fraud, at least as far as criminal liability. I mean, that term is used somewhat loosely, but but is not claimed as as a victim. And I don't think it could reasonably be that fatal, though. Is it fatal that that the that the court assuming assuming for purposes of this question that you're right, that the court is not claimed as a victim? Is that is that fatal? Can isn't there case law supporting the idea that the false statements or misrepresentations don't necessarily have to go directly to the one who is deprived of the money or property? There is, Judge Kelly, and the main case that the district court below relied on in the prosecution, too, is United States versus Bluemeyer. It's a nineteen ninety ninety two, I believe. I'm sorry. Ninety seven. Eighth Circuit decision. The problem that does talk specifically about third party fraud as as a concept. The problem with that is that it has been superseded, at least as it applies to this case, by a number of cases and the principles that they establish. Two years later, in nineteen ninety nine, in the Nader case, the Supreme Court held really for the first time and emphasized that materiality is an essential element of a fraud prosecution. And so the court would have to find that the the omissions to the court, to the courts. And there were many alleged in the indictment that those were material to the recipients of the demand letters. And I don't think materiality. So I think there's a myth that missing element imposed after the Bluemeyer decision is not satisfied. Let me interrupt you, Judge Kelly. Did you get your question answered? Yes. Yes. Because I will warn you that you're within your rebuttal. But of course, it's your time. You can use it all now if you want. I appreciate that. Two other problems with it. So no materiality, no misrepresentation of an essential element of the bargain. That's the shell of cases, second circuit case and not and the misrepresentations to the court in particular. We're not about money or property, as emphasized after the Bluemeyer case in the skilling decision and in the Kelly decision just last summer. And with that, I will be grateful to reserve the rest of my time. You may reserve it. And Mr. McLaughlin. Good morning. It is David McLaughlin. I'm with the U.S. Attorney's Office in Minneapolis. I'm appearing for the United States in this criminal matter this morning. Your honors, the indictment in this case alleges a massive, sophisticated scheme to the fraud. And in detail, it lays out a gossamer web of lies of commission and omission that ended up depriving the victims of the scheme of six million dollars. As the court is aware, the victims of this scheme were subscribers to Internet accounts that were detected downloading pornography from what I'll call stealing sites, from the Pirate Bay and other sites that are out there for the specific purpose of attracting people to download material. So to set up my argument, I just want to run through the bare bones skeletal steps. In this case, the defendants first took a piece of pornography, oftentimes something that they shot themselves and put it on the Pirate Bay or another stealing site as bait. It's copyrighted bait, right? As copyrighted bait. Yeah, go ahead. OK, then Paul Hansmeier's brother was a sophisticated tech guy and could watch and watch the bait and detect what IP addresses were associated with the downloading. Then these guys filed fraudulent lawsuits in federal and state courts all over the United States to get early discovery, that is to get permission to subpoena the ISPs to figure out who these guys were. How fraudulent are they, though? The lawsuits? Yeah, because if there's a copyright, you get to file a lawsuit about it, huh? The lawsuits were completely fraudulent in the following respects and as alleged in the indictment. First of all, all of these John Doe suits led the courts to believe that a professional law firm, Prenda Law, was bringing the suits. And that was completely false. Prenda Law was just an alter ego for the defendants. Two, the lawsuits led the courts to believe that real clients in the business of distributing pornography for profit, AF Holdings and Ingenuity 13, were the clients. They weren't. Those entities were also alter egos for the defendants. Third, the lawsuits led the courts to believe that AF Holdings and Ingenuity 13 were being damaged because their revenues were being affected by downloading activity. That was completely false. As alleged in the indictment, two different times, paragraph 27 with respect to Ingenuity 13 and paragraph 33E with respect to AF Holdings. Those companies did not distribute pornography. They did not have revenue streams and it wouldn't have been possible to damage them by downloading their material. Can you speak then to the materiality aspect, if that in fact would concern the courts, which ultimately it did, and they put a stop to that. But what about the assertion that there has to be some kind of connection then or materiality to the actual ultimate victim? Why do they care? The case law is very clear that you don't have to lie to your victim. And there was plenty of lying to the victims, which I'll go through in a second. Let's assume that's true for this and then jump to the materiality aspect of it. May I respond quickly to your first question? The cases are legion that hold that a lie to A in order to get B's money or property properly states an offense under the mail and wire fraud statutes. This court's recent opinion in Kidd, the chiropractic case, where the chiropractic defendant said, I didn't even tell a lie to the insurance company. And this court said the gravamen is whether there's a scheme. There's I think in that case there was. But the conclusion was, though, if the information had been it was being it was being withheld from the insurance company and it was material so that the insurance company would have acted differently. It had it had the information that it was that was kept from it. So the question here is, is the same with the same thing happen here with the victim, the John Doe? Well, I'm I want to first to respond to whether you can have an actual mail fraud if you lie to A to get B's money. And the answer is, yes, there's the Kidd case, the Macmillan case out of the Fifth Circuit, where that court said the representations in a mail fraud scheme need not be made directly to the scheme's victim. There's United States versus Christopher out of the First Circuit. Quote, nothing in the mail and wire fraud statutes requires that the party deprived of money or property be the same party who is actually deceived. There's this court's Blumeyer decision. There's United States. I don't mean to be too heavy handed, but I don't think you're answering Judge Kelly's question about materiality. Of course, if she says you are, I'm a happy camper. Maybe the best way to answer the question about materiality is to talk about what the downloaders did care about. May I do that for a moment? Sure. Kelly's in charge here. Go ahead. So if you look at paragraph 24 of the indictments, paragraph 24 alleges that these defendants made a direct misrepresentation to the subscribers. It says, quote, however, the defendants falsely represented to the subscribers that they and their clients had legitimate copyright infringement claims against the subscriber. When, in fact, and as defendants knew, they had uploaded the BitTorrent website to the BitTorrent website, the very movie they were suing up. Now, isn't that getting at the misrepresentation again to the victim? I thought your initial theory here, at least out of the gate, was it's OK to make false representations to a third party with the injury to the victim. And that we are going to talk about how those misrepresentations to the court were material to the John Doe, as opposed to what I think what you're getting at is a different theory, which is the direct misrepresentations to the John Doe. I'm inclined to say that whatever these guys said to the courts, the John Doe's probably didn't care about. I agree with that. But under the law, the lies to the courts count, even if the money or property is coming from the subscribers. That's what all of these cases stand for. The Greenberg case out of the Second Circuit, for example, in the Second Circuit, there is a term we don't have in this circuit. The defense bar argues there needs to be. The victim needs to be lied to. And Greenberg said that's the Second Circuit case that rejects that rejects what the Second Circuit calls a convergence theory. There's no requirement that the scheme to defraud must involve the deception of the same person or entity whose money or property is the object of the scheme. So can I just ask a question at this point? Is your is your position then that materiality is not necessary when you say that the John Doe's didn't care about? That's not our. OK, I'm sorry. I didn't mean to interrupt you. That is definitely not our position. Our position is that materiality is an important part of the statute. And it was material to the judges in their decision whether to issue the subpoenas that these guys weren't who they said they were, didn't intend to sue, that AF Holdings and Ingenuity 13 weren't real entities. They were shams. They would never have gotten their subpoenas without telling those lies to the courts. I would venture to say not a single court would have issued a subpoena if they had known that AF Holdings and Ingenuity 13 were just extortion entities rather than so-called copyright enforcement entities. But, counsel, are there disciplinary proceedings reports? In Missouri, they publish a report. I know nothing about Minnesota on this. When there's discipline of an attorney, are there disciplinary proceedings that make findings that are relevant here? I believe, and I could be corrected on this, that Mr. Hansmeier has been disbarred. Yeah, but that's not what I'm asking. Is there some kind of discipline report that has some kind of findings by, let's say, the Minnesota Supreme Court, just to pick an entity at random? I'm not sure whether there is or isn't, Your Honor. OK, thank you. We'll find out. OK. So, counsel, question. I think if you survey trial judges, I think, unfortunately, they would say that there are attorneys that pretty regularly misrepresent the facts, often material facts, to the court in order to prevail on motions or even to prevail with respect to the final outcome to the detriment of opposing parties. Are those lawyers subject to mail or wire fraud prosecution? Not just on that basis alone, but when you combine all of the elements in this case, posing as lawyers for real entities that supposedly were really distributing pornography, claiming to be damaged, and then seeking subpoena authority to discover names of people that you have no intention of suing. If they fight, they go on to the next person. That's alleged in the indictment. There's not a judge in this country that would issue a subpoena under those circumstances, and that is material to every court that issued a subpoena in this case. What about the notion that I'm certainly no expert in civil practice of copyright, at a minimum, but that lawyers do send cease and desist letters to potential defendants and seeking to perhaps negotiate instead of go to court? Where's the line that you draw between having no intention ever whatsoever of filing the lawsuit and pursuing this to see whether we can work it out and then decide whether it's worth filing? Well, wherever that line is, Your Honor, it's south of where these guys' conduct was. They had no intention of ever suing anybody who fought back. At least that's the allegation in the indictment. Mr. Mooring argued earlier that that's just wrong, but, of course, we're dealing with the allegations of indictment. When somebody goes to a court pretending to intend to sue somebody in order to get a subpoena to find out who they can shake down, that's fraud. That's material to that court, and it is a sine qua non to the success of this scheme. I see I've got three minutes left. May I shift to the misrepresentations made directly to the victims? I have already quoted paragraph 24 of the indictment that alleges that they were lied to. Mr. Mooring has appended a demand letter. It is Addendum E to the defense brief, and it is full of affirmative misrepresentations to these subscribers. If I may direct the court's attention to that for a moment. So this is a demand letter. It purports to come from Prendeloff, so a subscriber getting this. What page are you on? I am on the defense Addendum E. It looks like it's page 46 of the Addendum of the defendant. I hope you've got it in front of you because this document, which hooks into paragraph 24 of the indictment, is full of affirmative misrepresentations. First of all, anybody getting it would think that they were receiving it from a legitimate law firm. Prendeloff was not a legitimate law firm. It was an alter ego of the defendant's. The first declarative sentence in this letter is a complete misrepresentation. It says Prendeloff Inc. has been retained by AF Holdings to pursue legal action. That was false. AF Holdings was a sham. AF Holdings was nothing more than an alter ego for the defendants, as was Prendeloff. It goes on to say that entities, such as our client, who depend on revenues to sustain their businesses and pay their employees, are damaged by downloading activity like the type that these people are being accused of. That wasn't true. They didn't have revenues. They didn't distribute pornography. It was an entity set up solely to extort these people. Now, here's the whopper in this letter. Mr. Mooring has cited the Shellef case. That is an Eighth Circuit case that says really in order to be actionable as mail-or-wire fraud, there has to be a misrepresentation of an essential element of the bargain. If you look at the bottom paragraph of this document and the next page of the document, what it says is we are going to sue you. We are going to name you in a lawsuit. We are going to embarrass you, and you're going to have to pay hundreds of thousands of dollars if you don't settle with us. That was a lie according to the indictment. These people didn't know because they were lied to that they weren't paying $4,000 to get out of being sued. They weren't going to be sued at all if they fought back. They paid $4,000 for nothing because they were lied to. That's the scheme alleged in this indictment. There were lies to the courts. There were lies to the subscribers. They were all very material, and we respectfully request the judgment of the district court here to be affirmed. Thank you, Mr. McLaughlin. Rebuttal, Mr. Mooring. Thank you. So as to the letter, a couple of quick points. One is everything that the prosecution talked about in the letter is not in the indictment. The letter does say, look, we're adverse. You should research. You should talk to a lawyer. It has cautionary language to that effect. I think we've now just heard a third theory, which is that the misrepresentations to the courts are material because the court was a victim in this criminal fraud prosecution for purposes of the fraud analysis, and that is not a point that has ever been made before, and I think it's fundamentally legally wrong. The courts were not victims. What was being pursued through the courts, not victims of criminal fraud. They were the recipients of misstatements, and so perhaps victims in that sense, but not victims of criminal fraud. What the misrepresentations to the courts were about was not money or property, so we're not talking about as outlined in Skilling and Kelly. The misrepresentations, those misrepresentations simply fall outside of the scope of the federal criminal fraud statute, and they were not material to the recipients of the demand letters, and were certainly not central to the bargain with the recipients of the demand letters. As to the question of third-party fraud, the cases that the prosecution focuses on are cases in which the misrepresentations were in fact material to the bargain, unlike the misrepresentations to the courts here. A case that they've cited, and the district court relied on, I think out of the Second Circuit, Eisen, for example, but I think this applies to the chiropractic case here, too. The misrepresentations to the court were perjured testimony about the very basis of the legal actions. So in Eisen, the defendants fabricated, paid for false testimony, introduced perjured testimony, paid witnesses to stay away, witnesses that were testifying about the personal injury lawsuits that were specifically there at issue. That is a very different thing than making misrepresentations to the court to get access to, to get subpoenas, to get access to data that provides identifying information that in turn identifies the recipients of demands. Okay, if I hear you, if I hear you, Mr. Mooring, there can be fraud in the court, but this isn't? I think there can be fraud based on misrepresentations to third parties, the court, too, but not in this instance, certainly not, for a number of reasons, both because what the misrepresentations to the court, the court was not a victim in the fraud sense, in the criminal liability sense, because the misrepresentations were not about money or property, they were about data, because those misrepresentations were not material to the victims, the fraud victims that are articulated and identified in the indictment, the recipients of the demand letters, and because the misrepresentations to the court were not central to the recipients of the demand letters in the way that perjured testimony about the claim would be. I think to take a step back, the context of this case merits some consideration and some comment. In a way, I've been around for a bit, I have never seen a case that involved the interface and invoked the interface between the criminal and civil systems in the way that this one does. Well, a lot of state bar situations do, but that's off the topic. I'll just tell you my experience versus your experience. So go ahead. Well, now your time's up. Sorry, I ate your last few minutes. So I'll give you one sentence. Okay. The overlap between the civil and criminal systems in this case makes the potential ramifications of the holdings that the prosecution is asking you to make potent, including the suggestion of affirmative defenses. Okay. No, that's good. I gave you the sentence and appreciate the argument here today. Thank you both for your arguments. Case number 19-2386 is submitted for decision by this court.